## Johnston et al. *versus* Jackson et al.

1. The limitation of five years, under the Act of 1804, to action by the owner against the purchaser under a tax sale, begins to run from the delivery of the deed; after which the owner can bring ejectment whether the land be vacant or not.

2. Under the Act of 1804, lands were sold for taxes in 1806 and 1817; an intruder entered after the five years without color of title; *Held*, that in an ejectment by one claiming under the purchaser, it was not necessary for him to prove all the pre-requisites of that act.

3. In ejectment by Jackson for 130 acres of land claimed by Johnston, who relied on the Statute of Limitations, and on a contract with Jackson

[Johnston *v.* Jackson.]

for 40 acres, part of the 130, the court charged that the contract was an acknowledgment of Jackson's prior title. *Held* to be correct.

November 10th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cambria county:* No. 8, to October and November Term 1871.

This was an action of ejectment by Anna Jackson and others, heirs of Thomas Jackson, deceased, against Charles Johnston and James Johnston, for 130 acres of land in Washington township.

The premises claimed in the writ were part of three warrants and surveys, one of 422 acres in the name of William Kineer, one of 346 acres in the name of James Kineer, and one of 75 acres in the name of John Haines.

The two Kineer tracts were assessed in Huntingdon county for taxes for the years 1802, 1804 and 1805. On the 6th of February 1811, the legislature passed an act authorizing the commissioners of Huntingdon county to collect taxes in Cambria and Clearfield counties. The William Kineer tract was sold for the taxes by the sheriff of Huntingdon county, to John Blair, on the 10th of January 1806, and the James Kineer tract sold by the treasurer of Huntingdon county for the taxes on the 13th of April 1817, to Nicholas Lefevre. These titles and that of the Haines tract all passed to Thomas Jackson, the ancestor of the plaintiffs, on and before the 3d of April 1843.

The defendants gave evidence that James Johnston, the father of the defendants, went on the premises in 1837, and died there in 1855, and his family had continued to reside there ever since; that the father had cleared and fenced about 20 acres in 1839 or 1840, and he and his family had cleared a little ever since, and that he used the timber as farmers generally use it. They also gave evidence as to the extent to which their father and they claimed and used the land; one witness, a surveyor, testifying that the quantity claimed by them was from 130 to 150 acres.

They gave in evidence this paper :—

"Summit, August 17th 1854.

"I have this day sold to Charles Johnston a piece of ground on the Summit, Cambria county, Penna., bounded and described as follows: commencing at the turnpike, a corner of the land now owned by said Johnston, thence running along said land, &c., * * * to the place of beginning; supposed to contain about 40 acres, of which there is about 20 acres cleared. In consideration the said Charles Johnston agrees to pay unto the said Thomas Jackson or his heirs twenty dollars for each and every acre, and when a deed is made or secured, the said Johnston to pay the balance when the survey is made.

W. W. JACKSON, Agent for Thomas Jackson.

[Johnston *v.* Jackson.]

"August 17th 1854, received of Charles Johnston, $450 on the above agreement.

W. W. JACKSON, Agent for Thomas Jackson.

"September 1st 1855, received of Charles Johnston, $120 on the within agreement.

W. W. JACKSON, Agent."

Thomas Jackson died in 1855.

W. W. Jackson, his son, testified that he was in the habit of making contracts for his father, who had given him directions to sell all his "mountain property" that he could ; that the money first endorsed on the agreement he paid his father; the other paid since his death had not been paid to the heirs.

Jackson testified at some length as to transactions in relation to this land.

The plaintiffs gave evidence that the land mentioned was part of the three surveys, the Kineer and Haines ; also evidence for the purpose of showing that Johnston went in under Jackson; that he had been employed by Jackson to see after his lands, take care of the timber, &c.

There was evidence in contradiction of W. W. Jackson ; also, by the defendant, that the land had never been in Huntingdon county.

The court (Taylor, P. J.) charged : * * *

["It was objected, when the evidence of the plaintiffs was offered of the tax-sale of the Kineer tracts, that made prior to the Act of 1815, it was necessary to the validity of the tax-title for the party asserting or setting it up, to show a strict compliance with all the requirements or directory provisions of the Act of Assembly under which the assessment and sale were made. This is true when the tax-title is set up against the title of the warrants ; but the rule, it is equally well settled and understood, is only applicable in that case, and is not available when set up by an intruder, that is, by one claiming by improvement or the Statute of Limitations.  And such is the attitude of defendants here.  Their defence, so far as it asserts title in them, rests it upon their entry and possession, if we except the claim resting on the paper purporting to evidence a sale to Charles Johnston by Wm. W. Jackson, of about 40 acres, on the 17th August 1854, in relation to which it is sufficient, as it respects this question, to say that the setting of it up here is an acknowledgment of the prior title of Jackson; and it is distinctly proven that Johnston never claimed any land embraced in this paper before its date.] So that we repeat the plaintiffs have exhibited evidence of title which entitles them to your verdict, unless some sufficient defence has been shown.

"The defence is threefold : first, that as it respects the two Kineer tracts, the tax-sale was void, for the reason, as alleged,

[Johnston v. Jackson.]

that these tracts were not, when assessed and sold, in Huntingdon county. * * * Third, that they are entitled to hold the 40 acres, or thereabouts, alleged to have been purchased by Charles Johnston from William W. Jackson the 17th of August 1854.

" Have the defendants established in point of fact the first proposition relied upon in defence—that the Kineer tracts, at the time of the assessment and sale of them for taxes, were in Somerset, and not in Huntingdon county? If so, the assessment and sale were unauthorized and void, and vested no title in the purchaser. It has been urged that it is only an irregularity in the sale of which no one but the warrantee could avail himself; but we are constrained to think it more than a mere irregularity. Still the action of the officers of Huntingdon county in this respect is to be regarded as correct until the contrary be shown. * *

"If, on the other hand, the defendants have satisfied you that the Kineer tracts were not in Huntingdon county when assessed and sold, then the plaintiffs cannot, for that reason, recover that portion of the land unless it appears that Johnston entered under Jackson, in which case it would be entirely immaterial whether the Kineer tracts, from 1802 to 1805, or 1806, even lay in Huntingdon or Somerset county.

"It is alleged by the plaintiffs that Johnston did so enter and hold under Jackson, and as there is here this dependence and connection between those two questions we have introduced, and considered the evidence as to the manner in which Johnston entered and held, * * * have the defendants made out a defence by contract of August 17th 1854, under Charles Johnston?

"This paper is no evidence to establish a contract. It amounts to nothing unless it was satisfied, or money paid and accepted by Thomas Jackson. Whether this was so or not, depends upon the testimony of W. W. Jackson.

["If Jackson is believed, the defendants are entitled to hold the land described in the contract contained in the paper according to the terms of it, that is, which the plaintiffs would be entitled to recover; the verdict as to this part would be *conditional*—in other words, with respect to this part of the land (if other defences fail), a verdict for the plaintiffs to be released as to this part, on the payment of the balance of the purchase-money, in such time as the jury may fix. If the jury do not believe W. W. Jackson (if the defence on the other points fail), your verdict will be a general verdict for the plaintiff. Whether you believe W. W. Jackson or not, your verdict as to this question will be for the plaintiffs, in one case—that is, if you believe him, a conditional verdict;—in the other; if you do not believe him, a verdict without any condition, or a general verdict."] * * *

The verdict was " for the plaintiffs for the land described in the writ. That portion of it embodied and described as in the agree-

ment of W. W. Jackson, agent of Thomas Jackson, dated August 17th 1854, to be released on payment of $230 in one year with interest from this date."

The defendants took a writ of error, and assigned for error the portions of the charge in brackets.

*S. M. Woodcock*, for plaintiffs in error, cited: As to tax-title, Hole *v.* Rittenhouse, 7 Harris 305.

*R. L. Johnston*, for defendants in error, cited: As to tax-title, Foster *v.* McDivit, 9 Watts 341; Foust *v.* Ross, 1 W. & S. 501; Dikeman *v.* Parrish, 6 Barr 210; Shearer *v.* Woodburn, 10 Id. 512; Troutman *v.* May, 9 Casey 455; Crum *v.* Burke, 1 Id. 377.

The opinion of the court was delivered, January 9th 1872, by

AGNEW, J.—Parish *v.* Stevens, 3 S. & R. 298, decided that the limitation of five years, contained in the Act of 1804, began to run from the sale of unseated lands sold for unpaid taxes. This was overruled in Waln *v.* Shearman, 8 S. & R. 357, on account of the supposed hardship of requiring the former owner to bring his action of ejectment against a vacant possession, and it was therein held that the limitation ran only from the time actual possession had been taken by the purchaser at the tax-sale. But the Act of 29th March 1824 removed this difficulty, and it is now the settled law that the limitation of five years begins to run from the time of the delivery of the deed to the purchaser under the tax-sale. After that moment the former owner can bring his action under the provisions of the Act of 1824, whether the possession be vacant or not: Robb *v.* Bowen, 9 Barr 71; Sheik *v.* McElroy, 8 Harris 25; Burd's Ex'rs. *v.* Patterson, 10 Id. 219; Iddings *v.* Cairns, 2 Grant 88. This, therefore, is a full answer to the errors assigned to the charge of the court on the subject of the tax-titles. The first sale took place in 1806, and the second in 1817, while John Johnston, the father of the defendants, did not enter into the possession until the year 1837, and then he entered as an intruder, without color of title. Thus entering, after the five years were fully ended, and without color of title, the case does not fall within that class of cases which rule that the purchaser at the tax-sale under the Act of 1804 must prove all the prerequisites to make the sale good under that act. The learned judge below was therefore right in saying that the plaintiffs had shown a good title under the tax-sales against the defendants, and could recover unless prevented by the other defences set up. He was right also in his instructions upon the alleged contract for the sale of the 40 acres.

Finding no error in the record,

The judgment is affirmed.